LUNT and others *v.* BOSTON MARINE INS. CO.

*(Circuit Court, S. D. New York.*   June 20, 1883.)

MARINE INSURANCE—REPRESENTATIONS—REPAIRS TO VESSEL—SEAWORTHINESS—BURDEN OF PROOF.

Where a vessel had put into Shelburne, Nova Scotia, leaking and in distress, and repairs were recommended after a survey, and the vessel sailed for Yarmouth for repairs, and a memorandum of insurance was effected upon the cargo before her arrival at Yarmouth, the application for the insurance containing a statement that the vessel was to be repaired at Yarmouth, *held,* in an action on the contract of insurance, that the requirement was only that such repairs as were necessary should be made, and if none were necessary none need be made ; and that, although in ordinary cases the burden of proof in cases of defense of unseaworthiness of the vessel rests upon the defendant, in this case, with the statement that the vessel was to be repaired at Yarmouth, in the application, the burden rested upon the plaintiff

*Lunt* v. *Boston Marine Ins. Co.* 6 FED. REP. 562, followed.

Motion for New Trial.

*Welcome R. Beebe,* for plaintiffs.

*Robert D. Benedict* and *Enos N. Taft,*for defendant.

WHEELER, J.   This suit is brought upon a contract of marine insurance on a cargo of potatoes on board the schooner Lacon from Yarmouth, Nova Scotia, to New York.   It was tried, and there was a verdict for the plaintiffs, which was set aside on motion of the defendant.   6 FED. REP. 562.   It has now been again tried with a like result, and been heard upon a similar motion.   The vessel had put into Shelburne, Nova Scotia, leaking and in distress.   The master had made a protest against her to the consular agent, stating her condition and asking for a survey, which was had, recommending repairs.   She sailed to Yarmouth for repairs.   The insurance was effected before her arrival there, on an application by the owners, signed by and on behalf of them, in due form.   A short memorandum of the insurance was made and delivered to the insured, and no policy was written out.   The application was produced on the trial, and contained the statement that the vessel was to be repaired at Yarmouth.   The plaintiffs' evidence tended to show that this statement was not in the application when made, but was inserted afterwards, without their knowledge or consent; and that the vessel was examined at Yarmouth and was not leaking, and did not need any

repairs. Among other testimony to that effect was that of the master. The defendant's evidence tended to show that the owner effecting the insurance, in negotiating with the agents, stated that the vessel was to be repaired at Liverpool, afterwards changed to Yarmouth; that the agent would not take the risk without, and that the statement about repairs was inserted there before the application was signed; that the vessel was in fact unseaworthy; and that she was not taken out of the water or unloaded for examination at Yarmouth, nor any repairs made. The court held that the plaintiffs were not bound by any statement in respect to repairs to be thereafter made not inserted in the application; that, if the statement as to repairs to be made was in the application, the plaintiffs were not entitled to recover without showing that the vessel was in as good condition as if the defects contemplated had existed and been repaired, so that she was tight, stanch, and strong, and seaworthy in fact; that, if the statement was not in, the plaintiffs would be entitled to recover unless the defendant showed that she was unseaworthy; and that the statements of the master in the protest to the consular agent were not evidence that the facts were as there stated, but were impeaching of his testimony to the contrary. The principal questions made arise upon these rulings, and instructions accordingly to the jury.

There is no claim that there were any fraudulent representations, as to then existing facts. The representation that the vessel was to be repaired at Yarmouth was in the nature of an undertaking that she should be so repaired. All the undertakings of the plaintiffs in this behalf were assumed to be in the application. The undertakings of the defendants which would have appeared in the policy were not in the memorandum, nor assumed to be. Parol evidence would undoubtedly be admissible to supply what was so left out. Such evidence would not add to a written contract, for the contract was not written, nor understood to be written. It was largely left in parol, with full knowledge that it was so left. Not so with the application. That was understood to be complete. The paper signed contained all that the parties intended to be put in, and it was signed as a completed thing. To admit evidence of other undertakings by the parties executing it, made before it was executed, to the same end, would be directly contrary to the rule that written contracts cannot be added to or altered by contemporaneous oral contracts. *Pawson* v. *Watson*, Cowp. 785.

The question as to where the burden of proof rests in cases of defense for unseaworthiness was fully and carefully considered when this case was up before, and the conclusion reached that in ordinary cases it rests upon the defendant; but that in this case, with the statement that the vessel was to be repaired at Yarmouth in the application, the burden rested upon the plaintiffs. *Lunt* v. *Boston Marine Ins. Co.* 6 FED. REP. 562. Nothing more than to refer to the decis-

ion then made seems to be now necessary. That reasoning and result are fully concurred in. The burden was shifted and placed fully upon the plaintiffs at this trial. The defendant insists, however, that this was not all that was necessary; that as no repairs were made a verdict for the defendant should have been directed. More was put upon the plaintiff than the proof of mere seaworthiness. The undertaking as to repairs was required and given in view of a supposed defect. If the defect did not exist, the supposition was without foundation, and what was agreed should be done was already done. There was a mutual mistake as to the object of the undertaking, which made it nugatory and prevented its fulfillment; if there was no defect there was nothing to repair. The end sought was accomplished without making the repairs. This view was also considered before, and with reference to it Judge WALLACE said:

"In the present case it is to be assumed the jury found that, after an examination at Yarmouth, it was evident no repairs were needed, and that the vessel was in a fit condition to proceed on her voyage. This being so, it would seem too plain to doubt that neither the interests of the insurer nor the fair purport of the promise required that to be done by the plaintiffs which would have been superfluous and futile."

It is now argued, however, that there was no sufficient evidence to warrant the finding that there was no defect to be repaired; that this could not be told without taking the vessel out of the water, and that the repairs contemplated were such that they could not be made without taking her out; and that, in effect, the finding of the jury has been substituted for the fact of repairs which the defendant took the risk upon. The question as to whether the tightness of the vessel could be ascertained without taking her out, was one of fact for the jury, and not of law for the court; and one of which the defendant had the full benefit in a faithful presentation in argument to the jury. The extent or kind of repairs to be made was not specified. It was not required that the vessel should be taken out of the water and examined to see what repairs were necessary, and that such as were so found to be necessary should be repaired. The simple requirement was, to be repaired at Yarmouth. This would seem to require only that such repairs as were necessary should be made, and to mean that, if none were necessary, none need be made. Whether any were necessary, and what would be sufficient proof that none were necessary, would be always questions of fact for the jury, so long as there was any evidence fairly and legally tending to show that none were necessary. There was testimony of surveyors and other experts to making examinations, and to finding the vessel sound; such that it is not claimed to be insufficient, otherwise than as it is claimed that nothing short of taking her out of the water would be sufficient. As argued, the agent probably would not have taken the risk on an undertaking that the vessel should be found by a jury to need no repairs; but that does not answer the case of the plaintiffs. Parties do

not ordinarly stipulate upon the verdicts of juries; but when they enter into contracts which cannot be solved without settling facts, it becomes necessary that they should be bound by the findings of juries. The verdicts do not make new contracts for the parties, but settle disputes about thóse which the parties make for themselves.

In making the protest to the consular agent about the condition of the vessel, the master was not· acting in any sense as the agent of the plaintiffs about the matter now in controversy. This insurance had not then been effected, was not being effected, nor was anything being done about it. In fact, he was not making the protest for them, but rather against them, in laying foundation for proceedings against their property to pay expenses of repairs. His statements in making the protest were, it seems clearly, not so made for them in the course of their business now involved as to bind them.

As the case is now understood and considered, the motion must be overruled..

Motion for new trial overruled, judgment for ⸤plaintiffs on the verdict, and stay of proceedings vacated.